[Civ. No. 33004. First Dist., Div. Four. Nov. 29, 1973.]

LLOYD CLIFTON, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

James L. Browning, Jr., United States Attorney, James L. Hazard, Assistant United States Attorney, Mathews, Traverse & McKittrick and James R. McKittrick for Petitioner.

No appearance for Respondent.

William F. Ferroggiaro, Jr., District Attorney, for Real Party in Interest.

**OPINION**

**RATTIGAN, J.**—Petitioner Lloyd Clifton seeks a writ of mandate which would compel respondent court to dismiss an indictment charging him with criminal homicide. The principal question presented pertains to whether, when, and where petitioner should challenge respondent court's jurisdiction upon the ground that he is constitutionally immune from criminal prosecution, under state law, for an act which he committed while engaged in the performance of his duties as an officer of the United States government.

The indictment in question was returned by the Humboldt County Grand Jury on February 5, 1973. Petitioner is charged in Count One thereof with second degree murder (Pen. Code, § 187), and in Count Two with involuntary manslaughter (*id.*, § 192, subd. 2), in connection with his having

shot and killed Dirk Dickenson on April 4, 1972.[1] Petitioner made three separate motions in respondent court for its orders dismissing the indictment upon the above mentioned jurisdictional ground and others. His motions having been successively denied, he commenced the present proceeding.[2]

### Facts

The evidence presented to the grand jury supports the following recital of facts: At all pertinent times, petitioner was employed by the federal government as a special agent of the Bureau of Narcotics and Dangerous Drugs, United States Department of Justice. In the course of an investigation conducted by himself and other federal officers prior to April 4, 1972, the investigators had concluded that a ranch located in a remote area of Humboldt County was the source of dangerous drugs which were being illegally marketed elsewhere in California. They had also concluded that Dirk Dickenson (the victim of the homicide in question) was one of the record owners of the ranch property, that he had violated federal dangerous drug laws, and that he was likely to be found on the ranch premises. They therefore obtained various warrants from the United States District Court for the Northern District of California. One of the warrants authorized a search of the ranch; another authorized the arrest of Dickenson on federal dangerous drug charges.

The investigating federal officers enlisted the assistance of state and local law enforcement personnel for the purpose of raiding the ranch and executing the warrants. The planned raid was conducted, early on the afternoon of April 4, 1972, by approximately 20 persons who converged on the ranch in a marked United States Army helicopter and in several motor vehicles on the ground. The full party included petitioner,

---

[1]The grand jury originally returned an indictment on January 5, 1973, charging petitioner in a single count with second degree murder (Pen. Code, § 187) on April 4, 1972. The indictment mentioned in the text was an "amended indictment" in which the grand jury added a second count charging him with involuntary manslaughter in connection with Dickenson's death. There having been no proceedings in respondent court which were directly addressed to the original indictment, the term "indictment," as used herein, refers to the amended indictment returned on February 5, 1973.

[2]One of petitioner's two attorneys of record herein is the Honorable James L. Browning, Jr., who is the United States Attorney for the Northern District of California. The other is Mr. James R. McKittrick, a member of the Humboldt County bar, who appears as a "Special Assistant United States Attorney." The record indicates that Mr. McKittrick visited Washington, D.C., in the course of the proceedings below, and that he was there "sworn in" to represent petitioner under the "Special" title last quoted. It thus appears that petitioner is represented and backed by the full resources of the United States government in this proceeding.

other federal agents and employees, state and county law enforcement officers, and newspaper and television reporters.

Petitioner, who had the relevant warrants in his personal possession, was in the group which was flown to the ranch by helicopter. When the aircraft arrived at the ranch cabin, Dickenson was in the building with one Judith Arnold. As the helicopter landed in front of the cabin, the cabin door (which had been open) was closed by the dwelling's occupants. Several men disembarked from the helicopter and ran toward the cabin, displaying guns. None of these men was uniformed; all wore casual civilian clothing, and some were "longhairs." Petitioner, who was in the lead, shattered the cabin door (by kicking it in) and entered the building.[3]

At this point, Dickenson fled the cabin through a rear door and ran away from it. Petitioner and another federal agent pursued him as far as the rear porch of the cabin, from which petitioner levelled his pistol at the running Dickenson and fired a single shot. The bullet struck Dickenson in the back and felled him; he died from the gunshot wound while being transported to a hospital somewhat later on the same afternoon.

Although the foregoing facts are substantially undisputed, the evidence presented to the grand jury is in conflict, or would support opposing inferences, on such other factual issues as to whether petitioner shouted to Dickenson a command to halt; what he said, and how many times, if he did shout; whether Dickenson heard him; and whether Dickenson knew, or reasonably should have known, that petitioner and his companions were law enforcement officers at any time, or at all.

Reiterating here all the points he raised on his various motions below,[4] petitioner first asserts that respondent court is without jurisdiction to proceed with his prosecution because of the federal constitutional rule that a federal officer cannot be adjudged guilty of a crime, under state

---

[3]In the subsequent prosecution of Judith Arnold and others on charges arising from this incident, the federal court suppressed evidence (seized in the cabin) upon the ground that the officers had violated federal law (18 U.S.C.A. § 3109) by failing to knock or announce their authority and purpose before making the forcible entry here described. (*United States* v. *Arnold et al.* (Oct. 18, 1972) N.D.Cal. No. 72-479.)

[4]In addition to his jurisdictional point as next discussed in the text, petitioner contends (as he contended in his various motions in respondent court) that the indictment should be dismissed because he was indicted "without reasonable and probable cause," according to the evidence presented to the grand jury; because (as also mentioned in the text hereof, *infra*) his act in shooting Dickenson was "justifiable" homicide under California law, *and as a matter of law;* and because of certain claimed irregularities in the presentation of the evidence to the grand jury.

law, for the commission of an act which was "necessary and proper" in the performance of his official duties as required and authorized by the law of the United States. (*In re Neagle* (1890) 135 U.S. 1, 74-76 [34 L.Ed. 55, 75-76, 10 S.Ct. 658]; *In re McShane's Petition* (N.D.Miss. 1964) 235 F.Supp. 262, 271-272 and cases cited.) He urges that we should issue the writ prayed based upon our determination, from the evidence presented to the grand jury *and as a matter of law,* that his shooting Dickenson was "necessary and proper" in the respect mentioned. In the alternative, petitioner contends that we should remand the cause to respondent court with directions that it conduct an evidentiary hearing on this issue, and to set aside the indictment if it finds that petitioner's act was "necessary and proper" as urged.

Petitioner also makes the argument (which is a corollary of his jurisdictional point, although neither jurisdictional nor constitutional in itself) that we should determine from the same evidence—again, *as a matter of law*—that his act in shooting Dickenson was "necessarily committed" in the performance of his duties as a federal officer and under the circumstances shown, and that we should grant the writ prayed upon the ground that the fatal consequence of the act was "justifiable" homicide for which California law exonerates him from criminal responsibility by reason of the pertinent provisions of Penal Code section 196.[5] We do not reach the latter argument, nor will we resolve the matter as urged on petitioner's jurisdictional point; for the reasons which follow, we dismiss his petition.

■ The constitutional rule cited by petitioner on his jurisdictional point is derived from the supremacy clause of the United States Constitution as it operates within the context of dual sovereignty. (U.S. Const., art. VI; *In re Neagle, supra,* 135 U.S. 1 at pp. 60-61 [34 L.Ed. 55 at p. 70] [citing and quoting *Ex parte Siebold* (1880) 100 U.S. 371, 394-396 (25 L.Ed. 717, 725-726)].)[6] It is historically settled (*In re Neagle, supra; In re McShane's Petition, supra,* 235 F.Supp. 262 at pp. 271-273 and cases

---

[5] "196. Homicide is *justifiable* when committed by *public officers* and those acting by their command in their aid and assistance, either—1. In obedience to any judgment of a competent Court; or, 2. When *necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty;* or, 3. When *necessarily committed* in retaking felons who have been rescued or have escaped, or when *necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest.*" (Italics added.)

[6] The pertinent provision of article VI, as cited in *Neagle* by reference to *Siebold* (which quotes it), reads as follows: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

cited), and its validity is not at issue here: as previously indicated, the question is when and where petitioner should raise it by way of challenging the jurisdiction of a California trial court.

A federal statute permits petitioner to raise this challenge, now or later in the course of his prosecution in a California court, by filing a petition for habeas corpus in an appropriate federal court. (28 U.S.C.A. § 2241.)[7] Related federal statutes empower the petitioned federal court to stay state proceedings pending against petitioner, as appropriate (§ 2251),[8] and authorize and require that court, acting "summarily," to conduct an evidentiary hearing on the factual issue whether petitioner's act in shooting Dickenson was "necessary and proper" in the performance of his duties as a federal officer. (§ 2243.)[9] If the federal court finds that his act was

---

[7] The federal statute here cited, and those quoted in the next two footnotes (*post*), appear in chapter 153 ("Habeas Corpus") of part 6 ("Particular Proceedings") of title 28 ("Judiciary and Judicial Procedure") of the United States Code. All references to these statutes are to title 28 of the United States Code Annotated. Section 2241 thereof provides in pertinent part as follows: "§ 2241. (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.

". . . . . . . . . . . . . . . . . . . .

"(c) The writ of habeas corpus shall not extend to a prisoner unless— . . . (2) He is in custody for an act done or omitted in pursuance of an Act of Congress . . ."

[8] "§ 2251. A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

"After the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void. If no stay is granted, any such proceeding shall be as valid as if no habeas corpus proceedings or appeal were pending."

[9] "§ 2243. A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto. [Par.] The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed. [Par.] The person to whom the writ or order is directed shall make a return certifying the true cause of the detention. [Par.] When the writ or order is returned *a day shall be set for hearing,* not more than five days after the return unless for good cause additional time is allowed. [Par.] Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce *at the hearing* the body of the person detained. [Par.] The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts. [Par.] The return

"necessary and proper," because it was "done . . . in pursuance of . . . [federal law] . . ." (§ 2241, subd. (c), par. (2); see fn. 7, *ante*), the court's consequently issued writ of habeas corpus will operate to bar his further prosecution in respondent court or in any other state tribunal. (*In re Neagle, supra,* 135 U.S. 1 at pp. 75-76 [34 L.Ed. 55 at pp. 75-76]; *In re McShane's Petition, supra,* 235 F.Supp. 262 at pp. 271-273 [and cases cited], 275.)

In a written order denying petitioner's motion to dismiss the indictment on jurisdictional grounds, respondent court reviewed the above-described federal remedy and observed: "This is an unusual remedy—one in which a Judge in effect makes a factual determination which would normally be made by a jury. This unusual remedy is one which can be exercised only by a United States court; there is no statutory or case law authority for its exercise by a state court." This observation was correct: the obvious reason that the law of California does not authorize its courts to exercise such remedy is that the remedy, and its finality, are necessarily—and exclusively—reserved to the federal courts by reason of the supremacy clause. (U.S. Const., art. VI [quoted in fn. 6, *ante*]; *Ex parte Siebold, supra,* 100 U.S. 371 at pp. 394-396; *In re Neagle, supra,* 135 U.S. 1 at pp. 59-61 [34 L.Ed. 55 at pp. 69-70]; *In re McShane's Petition, supra,* 235 F.Supp. 262 at pp. 271-273 and cases cited.)

Petitioner concedes that the federal remedy is now available to him. However, he has indicated to this court that he presently intends to pursue dismissal of the indictment within the California judicial system at this time; that he will not exercise his federal remedy unless and until he is finally denied his objective in the California courts; and that he will exercise it the moment that the last-mentioned event occurs.[10] It therefore appears that petitioner is invoking the very jurisdiction he challenges, but is reserving his federal remedy in the event that the challenged jurisdiction is exercised unfavorably to himself.

The operation of the supremacy clause does not require that a California court indulge petitioner in a waiting game, nor does it command that a California court labor with the merits of his present cause in the face of the prospect that its actions will be undone by a federal court with the finality which a state court's decision does not have as long as that

---

and all suggestions made against it may be amended, by leave of court, before or after being filed. [Par.] *The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.*" (Italics added.)

[10]At oral argument herein, petitioner's attorneys (see fn. 2, *ante*) candidly stated their intentions as recited herein.

prospect exists. Since petitioner's jurisdictional point rests upon the supremacy clause, he should be required to invoke the judicial power of the supreme sovereign before exhausting the resources of a state court. We accordingly dismiss his petition with the admonition that he pursue his federal remedy forthwith. (See text at fns. 7, 8 and 9, *ante.*)

The alternative writ heretofore issued is discharged. The petition is dismissed.

Devine, P. J., and Christian, J., concurred.

A petition for a rehearing was denied December 28, 1973, and petitioner's application for a hearing by the Supreme Court was denied January 24, 1974.